UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAMADOU THIAM, | ) | Case No.: 1:26 CV 610 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT A. HILDEBRAND, *et al*., | ) | |
| | ) | |
| Respondents | ) | ORDER |

Currently pending before the court in the above-captioned case is Mamadou Thiam's ("Petitioner" or "Thiam"), through counsel, Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Under Local Rule 72.2(b)(2), Magistrate Judge James E. Grimes, Jr. was referred the case, and prepared a Report and Recommendation. (ECF No. 7.) For the reasons below, the court hereby adopts the Report and Recommendation, and dismisses the Petition.

**I. BACKGROUND**

**A.      Thiam's Immigration and Removal Proceedings**

Mamadou Thiam is a 34-year-old man from Senegal. (ECF No. 6 Ex. 1, Record of Deportable/Inadmissible Alien at PageID 142–44.) On October 29, 2023, he crossed the border into the United States, in or near San Ysirdro in California. (*Id.*; ECF No. 6 Ex. 2, First NTA at PageID 146.) Shortly after crossing, he was encountered by a Border Patrol Agent, who determined him to be "an alien who illegally entered." Thiam was "arrested and transported to the Murrieta Border

Patrol Station for further processing." (Record of Deportable/Inadmissible Alien at PageID 144.) During processing and inspection by Border Patrol, Thiam "admitted to illegally crossing the international boundary without being inspected by an immigration officer at a designated Port of Entry." (*Id.*) Thiam was designated as "an alien present without being admitted or paroled," and issued a Notice to Appear ("NTA"), ordering him to appear for a hearing in Immigration Court on July 24, 2025. (*Id.*; First NTA at PageID 146.) He was then released from the custody of the Department of Homeland Security ("DHS"). (Record of Deportable/Inadmissible Alien at PageID 144.)

On July 24, 2025, DHS issued Thiam a Notice and Order of Expedited Removal. (ECF No. 6 Ex. 3, Form I-862.) Correspondingly, DHS filed a Motion to Dismiss the removal proceedings in Immigration Court, (ECF No. 6 Ex. 4) , "to permit DHS to pursue expedited removal under [S]ection 235(b)(1)(A)(iii)" of the Immigration and Naturalization Act ("INA"). (*Id.* at PageID 153–54.) On July 30, 2025, the Immigration Judge ("IJ") granted dismissal without prejudice, notifying Thiam he could "pursue his claims in expedited removal proceedings, if necessary." (ECF No. 6 Ex. 5 at PageID 158–59.) This dismissal was affirmed by the Board of Immigration Appeals ("BIA"). (ECF No. 6 Ex. 6, BIA Decision 01/13/26.) Thereafter, DHS began processing Thiam "for expedited removal with credible fear of persecution if he was to return to his country of origin." (Resp. at PageID 130.) An asylum officer reviewed Thiam's fear claim, and determined he had no credible fear of persecution or torture in his home country of Senegal. (ECF No. 6 Ex. 7, Form I-863 at PageID 164.) However, upon review by the IJ pursuant to 8 C.F.R. § 1208.30(g), the negative credible fear finding was vacated. (ECF No. 6 Ex. 8, IJ Order at PageID 167–68.) The IJ found Thiam "*ha[d]* established a *reasonable possibility* of persecution (meaning a reasonable possibility

of being persecuted because of their race, religion, nationality, political opinion, or membership in a particular social group) or torture." (*Id.* at PageID 168.)

After being placed back in regular removal proceedings, Thiam was issued a Notice to Appear on September 25, 2025, charging that he was removable under 8 U.S.C. § 1182(a)(7)(A)(i) and (a)(7)(A)(i)(I).  (ECF No. Ex. 9, Second NTA at PageID 169–72.) On October 7, 2025, Thiam filed "Respondent's Written Pleadings," (ECF No. 6 Ex. 10 at PageID 173–79), wherein he admitted his unlawful immigration, "concede[d] removability," and "decline[d] to designate a country of removal." (*Id.* at PageID 174–75.) The IJ issued a Finding of Removability and Scheduling Order, (ECF No. 6 Ex. 11), on October 9, 2025, identifying Senegal as the country of removal, with Peru as an alternate. (*Id.* at PageID 180.) Thereafter, Thiam filed an Application for Asylum. (ECF No. 6 Ex. 12 at PageID 184–85.) The matter was set for an Immigration Court Hearing regarding his Application for Asylum, and continued until January 30, 2026, at Thiam's request. (ECF No. 6 Ex. 14, Hearing Notice at PageID 188; Resp. at PageID 131.)

However, on January 28, 2026, DHS filed a Motion to Pretermit (ECF No. 6 Ex. 15 at PageID 190–202), on the basis that Thiam was "subject to the Asylum Cooperative Agreement (ACA) with Uganda." (Mot. to Pretermit at PageID 191.) The IJ granted the Motion to Pretermit in part, and "set th[e] matter for a special master calendar hearing . . . to conduct a brief hearing to determine the applicability of the ACA to the Respondent," per the BIA's decision in *Matter of C-I-G-M- & L-V-S-G-*, 29 I&N Dec. 291, 296 (BIA 2025). (ECF No. 6 Ex. 17, IJ Order at PageID 209–10.) On February 11, 2026, the IJ entered an oral decision, with written summary (ECF No. 6 Ex. 18), denying Asylum and ordering Thiam removed to Uganda. (*Id.* at PageID 211–14.) Thiam reserved the right to appeal, (*id.*), and filed a Notice of Appeal from a Decision of An Immigration

Judge (ECF No. 6 Ex. 19 at PageID 215–22), through counsel, on March 11, 2026. He stated his reasons for appealing as follows:

> The Immigration Judge's decision ordering my removal to Uganda. The decision should be reversed because it violates statutory protections under the Immigration and Nationality Act (INA) and constitutional guarantees of due process. Because the Immigration Judge failed to fully consider these statutory and constitutional protections, the order of removal to Uganda should be vacated. I request that the Board of Immigration Appeals review the decision, reverse the removal order, and remand the case for further proceedings consistent with the protections guaranteed under the Immigration and Nationality Act and the United States Constitution.

(*Id.* at PageID 217.) Thiam's Appeal remains currently pending before the BIA, so there is not yet a final order of removal in his case. (Resp. at PageID 131) (citing 8 C.F.R. § 1241.1(a) ("An order of removal by the immigration judge at the conclusion of proceedings under [§] 240 of the Act shall become final: (a) Upon dismissal of an appeal by the Board of Immigration Appeals; . . .")).)

**B.      Procedural History**

On March 16, 2026, Thiam filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. (ECF No. 1) in this court.  The case was referred to Magistrate Judge James E. Grimes Jr. (the "Magistrate" or "Judge Grimes"), pursuant to Local Rule 72.2(b)(2) for the preparation of an expedited Report and Recommendation ("R&R"). (ECF No. 2.) The Magistrate's Initial Order (ECF No. 3) issued on the same date, ordered Respondents to file their Response by March 20, 2026. (*Id.*) Accordingly, Respondents filed their Response (ECF No. 5) and then corrected Amended Response (ECF No. 6), with Exhibits, on March 20, 2026. Petitioner did not file a Reply, and the time to do so expired on March 25, 2026. (Magistrate Initial Order at PageID 29.) On March 30, 2026, Judge Grimes issued his R&R (ECF No. 7), recommending dismissal of Thiam's Petition. On April 13,

2026, Thiam timely filed his Objection (ECF No. 8) to the R&R.

## II. LEGAL STANDARD

When a court receives timely written objections to a magistrate judge's R&R, it "shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, *de novo* review is limited only to those issues that a petitioner specifically identifies. *Howard v. Secretary of Health and Human Servs*., 932 F.2d 505, 509 (6th Cir. 1991). A "general objection, or one that merely restates the arguments previously presented is not sufficient." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Without specific objections, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks . . . wast[ing] judicial resources rather than saving them, and run[ning] contrary to the purposes of the Magistrates Act." *Id*. at 748 (citing *Howard*, 932 F.2d at 509).

Thus, a non-specific objection "has the same effect as a failure to object" to the R&R. *Aldrich*, 327 F. Supp. 2d at 747–48. Consequently, a court that receives only general objections to the Magistrate's R&R, "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes (detailing lessened standard for adopting R&R when no objection is filed). *See also, e.g.*, *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (citing *Howard*, 932 F. 2d at 509) (explaining courts should not have to do "[a] reexamination of the exact same argument that was presented to the Magistrate Judge" absent specific objections); *Brown v. Hamilton Cnty*., No. 1:19-CV-00969, 2022 WL 2816266, at *2 (S.D. Ohio July 19, 2022) (citation omitted)

("disregard[ing]" objections to R&R for being too general).

Accordingly, the court must determine if specific objections to the R&R have been made. *Aldrich*, 327 F. Supp. 2d at 749; *Feathers v. Foley*, No. 5:22-CV-540, 2024 WL 1990886, at *1 (N.D. Ohio May 6, 2024), *certificate of appealability denied sub nom*. *Feathers v. Reynolds*, No. 24-3466, 2024 WL 5707887 (6th Cir. Dec. 2, 2024). Insofar as the Petitioner presented specific objections, the court will conduct "*de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, insofar as the Petitioner states "nothing more than mere disagreements with the R&R," the court need only review the R&R for clear error. *Brown*, 2022 WL 2816266, at *2.

### III. LAW AND DISCUSSION

Federal district courts may grant Writs of Habeas Corpus to prisoners who are held "in custody in violation of the Constitution or laws or treaties of the United States." 18 U.S.C. § 2241(c)(3). Habeas relief under § 2241 is available to immigrants who seek to challenge the legality of their detention in Immigration and Customs Enforcement ("ICE") facilities. *See, e.g., INS v. St. Cyr*, 533 U.S. 289 (2001). Thiam's Petition indicates that he is currently held on immigration charges in ICE custody, is filing a Petition to challenge his "Pretermit to Uganda," and acknowledges that he has a pending appeal in the Board of Immigration Appeals regarding the application of the Uganda ACA to his case. (Pet. at PageID 4–5.) Thiam, through counsel, makes three arguments for Habeas relief: (1) "Continued Custody of the Petitioner is a Ruse to Allow Further Custody of the Petitioner in the United States"; (2) "The Use of the ACA Treaties to Pretermit Scheduled Asylum Hearings is An Unconscionable Ruse to Deny Petitioner of His Due Process Rights"; and (3) "The ACA Treaties Negotiated By the Trump Administration are Violative of the Equal Protection Clause

-6-

of the Fifth and Fourteenth Amendments to the United States Constitution." (*Id.* at PageID 15–19.)

**A.    The Magistrate's Report & Recommendation and Thiam's Objection**

In his R&R, Judge Grimes first concluded that Grounds Two and Three must be dismissed for lack of jurisdiction, pursuant to limits on judicial review prescribed by 8 U.S.C. § 1252(a)(5) and (g). (R. & R. at PageID 241–43.) In addition, he concluded that Ground One must be dismissed because Thiam failed to meet his initial burden to establish indefinite detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), upon which his argument relies. (R. & R. at PageID 241–48.)

Thiam filed an Objection (ECF No. 8), through counsel, but did not make specific objections to the above determinations by the Magistrate. In fact, Thiam does not address the R&R's specific findings in any meaningful way. (*Id.* at PageID 249–63.) Thiam is not a *Pro Se* Petitioner, so the court need not take any special care to afford him leeway or parse through the Objection to identify possible arguments. However, the court reviewed the Objection thoroughly, and found it does not contain any specific objections to the R&R's findings and grounds for dismissal. The majority of the Objection presents broad discussion of ACAs, the safe third country exception, and Uganda being designated a safe third country. (*Id.* at PageID 249–62.) As to these issues, Thiam presents general arguments, policy concerns, and conclusory allegations, but he does *not* identify potential inaccuracies in the R&R, or state specific disagreements with the Magistrate's conclusions therein.

Given the lack of specific objections to the R&R's recommendation to dismiss, the court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes. After a thorough review and finding no clear error, the court can adopt the Magistrate's R&R on this basis alone. However, the court emphasizes that the outcome is the same even under *de novo* review. Despite the lack of

specific objections, the court reviewed Thiam's 15-page Petition and the record. After a thorough review, the court finds Thiam's Petition must be dismissed, for the same reasons enunciated in the R&R, as discussed below.

**B.      This Court Lacks Jurisdiction Over Thiam's Challenges to the ACA.**

As previously indicated, Thiam's Objection primarily states broad criticisms of ACAs in general, and the designation of Uganda as a safe third country in particular. (Obj. at PageID 249–63.) These arguments are meant to support Thiam's challenges to his removal under the Uganda ACA, argued in Grounds Two and Three of the Petition: (1) "that the immigration judge's decision to deny Thiam's asylum application based on the Agreement is improper," and (2) "the Agreement violates the Equal Protection Clause." (R. & R. at PageID 241 (citing Pet. at PageID 15–19).) For example, Thiam argues he should not be removable under the applicable ACA, because Uganda would not provide a "full and fair procedure for determining a claim to asylum or equivalent temporary protection," and is not "genuinely safe." (*Id.* at PageID 251–52.) He further argues that "the ACA agreements were ramrodded . . . with the intention of preventing . . . the due process of law." (*Id.* at PageID 261.) Finally, Thiam asks the court to "order an evidentiary hearing into the issues of Uganda being a 'safe third country,' the intent, if ever, to schedule asylum hearings and, indeed any idea of the process and timing for the asylum seekers in limbo." (*Id.* at PageID 262.)

However, Thiam does not address the jurisdictional issues that preclude this court's review of those matters, which were discussed at length by the Magistrate. (*Id.* at PageID 241–43.)  In essence, the R&R's clear explanation of why this court cannot consider his claims challenging the safe third country determination, nor removal decisions went unchallenged. (*See* R. & R. at PageID 241–43.) Moreover, the court agrees with the Magistrate's conclusion that Grounds Two and Three

must be denied. First, where a petitioner "filed his Petition prior to a ruling by the [BIA] on his appeal" of an IJ's decision, he "has not exhausted his administrative remedies as required by the statute." *Pirapakaran v. Gonzales*, No. 1:05 CV 1547, 2005 WL 8171425, at \*2 (N.D. Ohio Dec. 21, 2005) (collecting cases). Here, Thiam filed his Notice of Appeal on March 11, 2026. (Notice of Appeal at PageID 215–22.) This Petition was filed merely five days later. (ECF No. 1.) No decision has yet been made on his appeal to the BIA. Accordingly, any judicial review of these claims is foreclosed at this time.

However, even if Thiam had exhausted his administrative remedies, *this* court still lacks jurisdiction to review his claims challenging the ACA and his possible removal to Uganda, under 18 U.S.C. § 1252(a)(5) and (g). Those provisions "limit judicial review," insofar as they "preclude district-court jurisdiction over constitutional challenges to final orders of removal." *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010). Thus, even once a final order of removal has been entered in this case, Thiam's claims cannot be brought in this court. Instead, Congress has "streamline[d] the review process by 'consolidat[ing] and channel[ing] review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals.'" *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014) (quoting *Aguilar v. U.S. Immigration & Customs Enforcement Div. Of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007)). Thus, as the R&R explained, Thiam's arguments regarding the ACA with Uganda and removal decisions are "challenges [that] run headlong into 8 U.S.C. § 1252(a)(5) and (g)," (*id.* at PageID 241) Thus, Grounds Two and Three fail.

**C.  Thiam Has Not Established an Indefinite Detention Claim under *Zadyvdas v. Davis***

In Ground One of his Petition, Thiam claims: "Continued Custody of the Petitioner is a Ruse

to Allow Further Custody of the Petitioner in the United States." (Pet. at PageID 15.) The R&R

explained that this claim fails on two bases: (1) absent a final order of removal, which does not yet

exist in this case, the claim of indefinite detention is not ripe, and (2) even if it was ripe, Thiam has

not made the requisite showing that there is "no significant likelihood of removal in the reasonable

foreseeable future," as required. (R. & R. at PageID 243–45.) Thiam's Objection does not address

these arguments at all, let alone convincingly argue to the contrary. At most, Thiam asserts detainees

are being held in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001), because "[a]s of April 2,

2026, 8 to 12 people have been sent to Uganda – out of 1100 ordered sent and 63,000 detained."

(Obj. at PageID251–52.) However, this does not specifically challenge the R&R's findings, nor

otherwise change the veracity of the Magistrate's reasoning for recommending dismissal. Otherwise,

the Objection pontificates about the current Trump Administration's political motives, financial

objectives, and international relations, (*id.* at PageID 249–63)—none of which addresses or refutes

the R&R, nor presents new facts or arguments on the merits of the actual claim.

 Moreover, the court's thorough review of the Petition and associated records leads to the

same conclusion as the Magistrate. Thiam has not yet received a final order of removal, given that

his appeal to the BIA remains pending. *See* 8 C.F.R. § 1241.1(a). Absent a final order of removal,

the *Zadvydas* framework is not applicable to his case. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510,

527–31 (2003) (collecting cases) (differentiating between *Zadvydas*, where "aliens challenging their

detention following final orders of deportation were ones for whom removal was 'no longer

practically attainable,'" versus petitioners who challenge "detention during removal proceedings,"

because such detention "is a constitutionally permissible part of that process."). Thiam does not

challenge the lawfulness of detention pending the conclusion of removal proceedings, nor could he

prevail on such an argument. *See id.* In addition, he does not allege any material facts or assert other claims regarding his detention.[1] Thus, even putting aside the lack of a final removal order, Thiam cannot satisfy his burden of proving that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadyvdas*, 533 U.S. at 702; (*see also* R. & R. at PageID 246–47.) He has made no showing that he will not be removed once his removal order is final. Consequently, Thiam's claim of indefinite detention in Ground One also fails.

### IV. CONCLUSION

For the reasons stated above, and after careful review of the R&R and record, the court finds no clear error on the face of the Report and Recommendation (ECF No. 7), and adopts it as its own. In addition, the court finds, even on *de novo* review, the Petition must be denied. Thus, for reasons fully explained in the R&R, and reiterated here, the court hereby denies Thiam's Petition for Writ of Habeas Corpus (ECF No. 1), and enters judgment in favor of Respondent.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

April 28, 2026

---

[1]     *See*, *e.g.*, *R.* & R. at PageID 243 ("At the outset, Thiam doesn't point to any evidence that he actually is detained. But because Respondents concede the fact of Thiam's detention, Doc. 6, at 2, I will assume that he is detained.")

-11-